## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO
## (WESTERN DIVISION)

| | | |
|---|---|---|
| **PLANNED PARENTHOOD CINCINNATI REGION**, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | **Case No. 1:04-cv-00493** |
| | ) ) | **JUDGE SUSAN J. DLOTT** |
| v. | ) ) | **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND** |
| **BOB TAFT**, *et al.*, | ) ) | **COSTS AND MEMORANDUM IN SUPPORT** |
| Defendants. | ) | |

## MOTION

Pursuant to 42 U.S.C. § 1988, Fed. R. Civ. P. 54(d), Fed. R. App. P. 29, and 28 U.S.C. § 1920, Plaintiffs hereby move this Court for an award of attorneys' fees and costs. As is more fully documented in the declarations in support of this motion and the time records of Plaintiffs' attorneys, Plaintiffs seek a total award of $475,886.77 for their reasonable attorneys' fees and expenses in this action for work done through November 30, 2006.

## MEMORANDUM IN SUPPORT

### INTRODUCTION

Plaintiffs are the prevailing parties in this litigation challenging the constitutionality of an unprecedented law, Ohio H.B. 126, which regulates the use of mifepristone, commonly known as RU-486, a drug used to induce an abortion pharmacologically, in most cases without surgical intervention. See H.B. 126, 125th Leg., Gen. Sess. (Ohio 2004), codified as amendments to Ohio Rev. Code Ann. §§ 4729.29, 4731.22, and 4731.223, and new § 2919.123 (hereinafter "the

Act").[1]  Plaintiffs brought this action seeking declaratory and injunctive relief against enforcement of the Act.  The Act was preliminarily enjoined by an order of this Court dated September 22, 2004.  Defendants immediately filed an interlocutory appeal of that Order.

On February 15, 2006, the Sixth Circuit issued its Opinion affirming in part and vacating in part this Court's Order granting the preliminary injunction, and remanded the case to this Court to rule on the remaining issues in the case, including the appropriate scope of preliminary injunctive relief in light of the Sixth Circuit's Opinion.  On April 13, 2006, the Sixth Circuit issued an amended judgment to the same effect.  See Planned Parenthood Cincinnati Region v. Taft, 444 F.3d 502 (6th Cir. 2006).

Upon remand, Plaintiffs filed a consolidated Summary Judgment Motion requesting both summary judgment and a permanent injunction (or in the alternative, renewed preliminary injunctive relief).  On September 27, 2006, this Court granted Plaintiffs' request for summary judgment, holding that the Act is unconstitutionally vague, and that no portion of it can be severed.  It therefore permanently enjoined Defendants from enforcing any provisions of the Act. Judgment against Defendants was entered on October 18, 2006.

On this motion, Plaintiffs now seek a total of $475,886.77 for their reasonable costs and attorneys' fees in this action at both the trial and appellate levels through this Court's judgment against Defendants.[2]  The requested fees are calculated as follows:

---

[1] While Plaintiffs and other reproductive health professionals initially referred to mifepristone as a form of "medical abortion," Plaintiffs now use the term "medication abortion" to refer to abortions induced using medications, since all abortions by all methods are "medical."

[2] Defendants are appealing this Court's ruling to the Sixth Circuit.  This petition seeks attorneys' fees and costs from the initiation of this lawsuit until this Court's October 18, 2006 judgment as well as fees incurred preparing this petition.

**Fees for Merits Litigation**

| Attorney | Total Hours | Hourly Rate | Total Hours Fees | Total Travel Hours | Travel Hourly Rate | Total Travel Fees | Total Fee Requested |
|---|---|---|---|---|---|---|---|
| Berner | 729.25 | $300 | $218,775.00 | 30 | $150 | $4,500.00 | $223,275.00 |
| Evans | 171.50 | $425 | $72,887.50 | 4 | $212.50 | $850.00 | $73,737.50 |
| Hill | 92.4 | $250 | $23,100.00 | --- | --- | --- | $23,100.00 |
| Gerhardstein | 42.80 | $375 | $16,050.00 | --- | --- | --- | $16,050.00 |
| Branch | 1.90 | $275 | $522.50 | --- | --- | --- | $522.50 |
| Law Clerk/ paralegal | 20.3 | $65 | $1,319.50 | --- | --- | --- | $1,319.50 |
| *Subtotal* | *1,058.15* | | *$332,654.50* | *34* | | *$5,350.00* | *$338,004.50* |
| *10% reduction* | | | *$33,265.45* | | | *$535.00* | *$33,800.45* |
| **Fee Request** | | | **$299,389.05** | | | **$4815.00** | **$304,204.05** |
| **Multiplier of 1.5** | | | **$449,083.57** | | | **$7222.50** | **$456,306.07** |

**Costs for Merits Litigation**

| Organization | Costs Incurred |
|---|---|
| PPFA | $11,454.00 |
| B. Jessie Hill | $437.20 |
| Gerhardstein & Branch | $275.75 |
| **Total Costs** | **$12,166.95** |

**TOTAL MERITS FEES AND COSTS**          **$468,473.02**

**Attorneys' Fees Application**

| Attorney | Total Hours | Hourly Rate | Total Fees Requested |
|---|---|---|---|
| Krasnoff | 23 | $290 | $6,670.00 |
| Evans | 1.75 | $425 | $743.75 |
| **Total Fee Application Fees** | **24.75** | | **$7,413.75** |

**TOTAL REQUEST (MERITS AND FEES)**          **$475,886.77**

**ARGUMENT**

**I.    PLAINTIFFS ARE PREVAILING PARTIES AND THEREFORE, ARE
ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS.**

Plaintiffs are the prevailing parties in this case and are, therefore, entitled to a fully compensatory fee award.  See Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b) ("In any action . . . to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.").  Here, Plaintiffs obtained all of the relief they sought, *i.e.*, a permanent injunction barring Defendants from enforcing the Act.

Under such circumstances, there can be no doubt that Plaintiffs are prevailing parties, entitled to their fees under Section 1988.  See Farrar v. Hobby, 506 U.S. 103, 111 (1992) ("Therefore, to qualify as a prevailing party [entitled to fees], a civil rights plaintiff must obtain at least some relief on the merits of his claim.  The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought . . . . "); Déjà vu v. Met. Gov't of Nashville and Davidson County, 421 F.3d 417, 420 (6th Cir. 2005) (finding it "beyond dispute" plaintiff was "a prevailing party under the well-established standards for such awards" because "the net result of the litigation was the entry of a permanent injunction barring enforcement" of the challenged law); Andretti v. Borla Performance Industries, Inc., 426 F.3d 824, 835-36 (6th Cir. 2005) (upholding district court's conclusion that plaintiff "was the prevailing party because judgment and a permanent injunction was [sic] entered in his favor").

**II.    THE TIME EXPENDED BY PLAINTIFFS' COUNSEL WAS REASONABLE.**

To determine a reasonable fee amount, a court must ascertain the lodestar amount, that is, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly

rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Time spent litigating the fee issue should also be included in the award. See Weisenberger v. Huecker, 593 F.2d 49 (6th Cir. 1979).

Here, Plaintiffs request compensation for time reasonably expended, the first element of the lodestar determination. The total time for which compensation is requested on the merits of this litigation is 729.25 hours (plus 30 hours travel time) for Ms. Berner, 171.5 hours (plus 4 hours travel time) for Mr. Evans, 92.4 hours for Ms. Hill, 42.8 hours for Mr. Gerhardstein, 1.9 hours for Ms. Branch, and 20.3 hours for a law clerk and paralegal who work with Mr. Gerhardstein and Ms. Branch. On this attorneys' fees application, Plaintiffs request compensation for 23 hours for Ms. Krasnoff and 1.75 hours for Mr. Evans. See time records annexed to declarations of counsel.

Plaintiffs were represented by counsel from Washington, D.C., New York, Cleveland, and local counsel in Cincinnati. Courts have approved the use of multiple attorneys in complex cases. For example, the Third Circuit upheld awards to multiple counsel in Planned Parenthood of Central New Jersey v. Attorney General of New Jersey, 297 F.3d 253, 272 (3d Cir. 2002), a complex abortion case, because "the magnitude of the case mandated the help of numerous attorneys . . . [g]iven the nature of the case, and . . . 'the complexity and specialized medical knowledge necessary for the proper presentation of the case.'" See also Guam Soc'y of Obstetricians and Gynecologists v. Ada, 100 F.3d 691, 695 n.2 (9th Cir. 1996) (court awarded fees to six separate counsel in successful challenge to abortion statute); Planned Parenthood, Sioux Falls Clinic v. Miller, 70 F.3d 517 (8th Cir. 1995) (court awarded fees to five lawyers in appeal regarding constitutionality of provisions of abortion statute).

To determine whether the use of multiple attorneys is compensable, the court looks to whether lawyer time is divided up appropriately. See, e.g., Johnson v. Univ. College of Univ. of

Ala. in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983); Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 139 (8th Cir. 1982).  Here, each lawyer for whom fees are requested played a distinct role in bringing this litigation to a successful conclusion.  Lead counsel Nicole Berner, took primary responsibility for the case from its inception.  In the District Court, she was responsible for drafting virtually all of the papers; researching and writing the briefs; identifying and developing expert witnesses; serving as lead counsel at the preliminary injunction hearing; and arguing the summary judgment motion.  On appeal, she researched and wrote the appellate brief and argued at the Sixth Circuit.  Roger Evans, who has more than twenty years of experience in abortion rights litigation, supervised Ms. Berner, reviewing Plaintiffs' filings, assisting at the preliminary injunction hearing, and providing strategic input in the case.

Ms. Berner and Mr. Evans represented the three Planned Parenthood Plaintiffs and the two individual physician Plaintiffs.  The sixth Plaintiff, Preterm, was represented separately by Jessie Hill.  However, Ms. Hill did not duplicate the efforts of Planned Parenthood's lawyers.  Instead, she provided strategic input and took on discrete tasks that were necessary for all of the Plaintiffs' success.  Plaintiffs utilized Mr. Gerhardstein and Ms. Branch as local counsel for all six Plaintiffs, and they were responsible for giving strategic advice, making all filings, and communicating with opposing counsel and the Court.  Helene Krasnoff came on board only to draft this fee petition.[3]

Given the many tasks before Plaintiffs' counsel, the hours expended were more than reasonable.  As this Court is aware, the Ohio provision at issue in this case involved a wholly unprecedented restriction on abortion.  Due to the novel nature of the Act, developing Plaintiffs'

---

[3] In addition, Planned Parenthood Federation of America attorney Mimi Liu devoted approximately 20 hours to assisting with the research and drafting Plaintiffs' Sixth Circuit brief, including the issue of severability.  As an exercise of billing judgment, Plaintiffs are not seeking compensation for Ms. Liu's time.

claims involved important strategic decisions as well as extensive research into novel legal issues.  While the expertise and resources of Plaintiffs' attorneys significantly reduced the number of hours that would otherwise have been expended, significant work was still required to prepare their case.  These efforts were understandably time-consuming, yet Plaintiffs completed all preparation to file the case, including numerous declarations in support of their preliminary injunction motion, in only two months, with Ms. Berner spending approximately 170 hours, Mr. Evans 20 hours, and Ms. Hill 12 hours.

Only six weeks after the case was filed, this Court held a preliminary injunction hearing with live expert witness testimony.  This meant that Plaintiffs had to develop expert testimony, respond to discovery, and prepare to handle witnesses as well as file a reply brief prior to the hearing.  Ms. Berner devoted approximately another 170 hours to this efforts, Mr. Evans (who participated in the hearing) 70 hours, and Ms. Hill 12 hours.  Following the preliminary injunction hearing, there was additional legal briefing and although Defendants filed an interlocutory appeal, this case continued to move forward in this Court.  This included briefing and argument on the issues of standing and class certification.

Briefing and arguing the appeal to the Sixth Circuit understandably took considerable work.  Ms. Berner devoted approximately 120 hours to the appeal, Mr. Evans 33 hours, and Ms. Hill 38 hours.  The remainder of Plaintiffs' counsels' time encompassed in this request was devoted to briefing and argument after remand on issues relating to the scope of preliminary injunctive relief and Plaintiffs' successful motion for summary judgment.  Finally, the time spent in preparing the fee application (24.75 hours), for which Plaintiffs seek compensation, is also

reasonable.  For this fee petition, Plaintiffs seek compensation only for the time spent by Helene

Krasnoff and Roger Evans, although others were involved in its preparation.[4]

      As demonstrated by their declarations filed with this motion, each of Plaintiffs' attorneys

have carefully documented the hours they spent on this case and their allocation to specific tasks.

They seek compensation only for time reasonably expended on this case, and have exercised

billing judgment, discounting time that would not ordinarily be billed to a client.  While

Plaintiffs had numerous attorneys working on their case, they utilized those attorneys in the most

efficient manner possible.  For example, Ms. Hill, the lead counsel for one of the parties, devoted

only 92.4 hours to this case, and she was assigned discrete issues, such as responding to claims

that Plaintiffs lacked standing in the District Court and responding to claims about this Court's

treatment of expert testimony on appeal.  Although Roger Evans supervised this case from its

inception, he spent approximately 175 hours on it.  Plaintiffs took other steps to minimize the

time expended, such as not seeking any discovery during the preliminary injunction phase as

well as taking the initiative to move for summary judgment, which ended the case without time-

consuming discovery or a trial.

      In addition, Planned Parenthood Federation of America ("PPFA") has not sought

reimbursement for the time of its legal assistants who performed research, cite-checking, and

various other tasks related to this litigation, and the PPFA attorneys have billed at their full rate

for time spent traveling only if that time was spent working on the case.  All other travel time

was billed at one-half of their requested rate.  Furthermore, in recognition of the possibility of

duplication of effort, Plaintiffs have reduced their fee request by ten percent to ensure that it is

reasonable.  See Northcross v. Bd. of Educ. of Memphis City Sch., 611 F.2d 624, 636-37 (6th

---

[4] In particular, Ms. Krasnoff's time on the fee motion was reduced because she was assisted by a
third-year law student intern and Plaintiffs seek no compensation for that time.

Cir. 1979) (citation omitted) (endorsing the "essentially fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services" in complicated cases involving multiple lawyers). In sum, aware that Ohio taxpayers will ultimately bear the burden of reimbursement, Plaintiffs have ensured that their fee request is not excessive.

Finally, it must be noted that Defendants vigorously defended the Act. For example, Governor Taft and the Attorney General Petro chose to take an interlocutory appeal of this Court's preliminary injunction order. Defendant Allen filed separate briefing in this Court, including questioning Plaintiffs' standing. As a general proposition, a party must be compensated for meeting the vigorous defense of the opposing party. The Seventh Circuit has explained: "A defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." Graham v. Sauk Prairie Police Comm'n, 915 F.2d 1085, 1109 (7th Cir. 1990); see also City of Riverside v. Rivera, 477 U.S. 561, 581 n.11 (1986).

## III. THE HOURLY RATES REQUESTED FOR PLAINTIFFS' COUNSEL ARE REASONABLE.

Plaintiffs request reasonable hourly rates, the second element of the lodestar determination. For Mr. Gerhardstein, Ms. Branch, and their legal assistant and law clerk, Plaintiffs seek their customary rates. Plaintiffs are seeking hourly rates of $300 for Ms. Berner, $425 for Mr. Evans, $250 for Ms. Hill, and $290 for Ms. Krasnoff (who has only worked on the fee petition).[5] These rates are commensurate with those charged by large law firms in

---

[5] A party is entitled to "fees for fees," that is, fees for preparing the fee motion. See, e.g., Weisenberger, 593 F.2d at 54 ("[I]mplementation of Congressional policy [behind 42 U.S.C. § 1988] requires the awarding of attorney's fees for time spent pursuing attorney's fees in the cases presently under review."); see also Hernandez v. Kalinowski, 146 F.3d 196, 198-99 (3d Cir. 1998) ("[U]nder the Civil Rights Attorney's Fees Awards Act of 1976 . . . fees for preparing a motion requesting costs and fees, or 'fees on fees,' are recoverable."); Thompson v. Gomez, 45 F.3d 1365, 1366 (9th Cir. 1995) ("Recoverable attorney's fees may include . . . fees incurred while pursuing merits fee ('fees-on-fees').").

Cincinnati.  In addition, given the novelty of this case, the complexity of the issues involved, and the skill of Plaintiffs' attorneys, Plaintiffs request that this Court apply a multiplier of 1.5 to the fee award for the merits portion of the litigation.  This request is reasonable and should be awarded.

**A.      Plaintiffs' Requested Rates Are Reasonable.**

Ordinarily, the hourly rates awarded in a fee petition are those from the forum where the case is litigated.  The Supreme Court noted in <u>Blum v. Stenson</u>, 465 U.S. 886 (1984), that attorneys' fees are to be calculated according to the "prevailing market rates in the relevant community."  465 U.S. at 895; <u>see also</u> <u>Adcock-Ladd v. Sec'y of the Treasury</u>, 227 F.3d 343, 350 (6th Cir. 2000) (finding that "'the relevant community'" for fee purposes is "the legal community within that court's territorial jurisdiction").  Thus, Mr. Gerhardstein and Ms. Branch, who practice in Cincinnati, should be awarded their usual rates of $375 and $275, respectively. <u>See</u> Declaration of Alphonse A. Gerhardstein ("Gerhardstein Decl.") at ¶¶ 5, 6.

As detailed in the declaration of Daniel J. Buckley, a partner in the Cincinnati office of the regional firm of Vorys, Sater, Seymour and Pease LLP, the rates requested by the PPFA lawyers and Ms. Hill are those charged by Cincinnati attorneys with comparable education, expertise, and experience.  <u>See</u> Declaration of Daniel J. Buckley at ¶¶ 5-9.  Moreover, the expertise of these lawyers in the area of reproductive rights – and medication abortion in particular – has greatly reduced the time they expended on this case.  Plaintiffs should, therefore, be awarded the full hourly rates they seek herein.

**B.      Given the Novelty of this Case and the Skill of Plaintiffs' Counsel, This Court Should Apply a Multiplier.**

Multipliers, or enhancements to the lodestar calculation, are permissible in some cases of "exceptional success."  Blum, 465 U.S. at 897 (quoting Hensley, 461 U.S. at 435).  An upward adjustment may be awarded in the

> rare case where the fee application offers specific evidence to show that the quality of the service rendered was superior to that one reasonably should expect in light of the hourly rate charged and that the success was "exceptional."

Id. at 899.  Plaintiffs' counsel respectfully request that this Court award a multiplier for the extraordinary results achieved.  Plaintiffs' counsel successfully prevailed in challenging this unprecedented regulation of medication abortion.  This relief will assist women seeking abortion by ensuring their ability to access a safe, legal alternative to surgical abortion.

The Sixth Circuit has upheld the application of multipliers in fee awards in complex civil rights cases such as this one.  In Barnes v. City of Cincinnati, the Sixth Circuit upheld this Court's award of a multiplier of 1.75 to counsel in this case (Mr. Gerhardstein and Ms. Branch) in a Title VII discrimination case.  401 F.3d 729, 746 (6th Cir. 2005).  The Sixth Circuit cited this Court's reasons for the award, explaining that the "multiplier was appropriate because of the 'novelty and difficulty' of [the] question and because of the 'immense skill requisite to conducting this case properly.'"  Id.  This Court also considered the fact that "the case was highly controversial" and "few lawyers locally or nationally would take such a case" as further support for the multiplier.  Id.  Furthermore, the Sixth Circuit upheld this Court's determination that "reasonable compensation for the result obtained by [the plaintiff's] attorneys could not be obtained without applying a multiplier of 1.75."  Id.

Similarly, in Paschal v. Flagstar Bank, 297 F.3d 431 (6th Cir. 2002), the Sixth Circuit upheld the District Court's decision to apply a 1.5 multiplier because:

> [The trial attorneys] did an excellent job at trial proving to the jury the merits of the [plaintiffs'] claims of discriminatory treatment in an area (residential mortgage lending) where discriminatory treatment is often difficult to prove.  The marshalling of evidence was an arduous and time consuming task.  Moreover, the hourly rates on which the "lodestar" amount is computed are comparatively modest in light of prevailing rates in this area [of law], and not out of line with those awarded in similar cases.

297 F.3d at 435-36 (citing district court opinion).  The Sixth Circuit held these were all proper reasons for awarding a 50% enhancement.  Id. at 436; see also Guam Soc'y of Obstetricians & Gynecologists, 100 F.3d 691 (awarding 2.0 multiplier in constitutional challenge to Guam anti-abortion statute because of the extreme undesirability of the case, the likelihood that other attorneys in Guam would not take the case, and the rare and exceptional nature of the case); Louisville Black Police Officers Org., Inc. v. City of Louisville, 700 F.2d 268, 279-81 (6th Cir. 1983) (approving upward adjustment of base fee by one-third in a complex civil rights case).

In order to determine if fees are reasonable or enhancements are appropriate, the Sixth Circuit has endorsed the use of the factors suggested in Johnson v. Georgia Highway Express, Inc., 488, F.2d 714 (5th Cir. 1974), overruled on other grounds, Blanchard v. Bergeron, 489 U.S. 87 (1989).  See Paschal, 297 F.3d at 435; see also Hensley, 461 U.S. at 430.  The Johnson factors include: (1) the experience, reputation, and ability of the attorneys; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) time limitations imposed by the circumstances; (5) awards in similar cases; and (6) the results obtained.  Paschal, 297 F.3d at 435.  The district court may apply the Johnson factors during its initial calculation of the fee award or when the court is considering a request for an enhancement.  Here, these factors demonstrate that Plaintiffs' counsel is entitled to a multiplier.

### 1.    Experience, Reputation, and Ability of the Attorneys

Plaintiffs' counsel are at the highest level of their profession and are well-deserving of the requested award.

Nicole G. Berner served as lead counsel in this case.  During her time at PPFA, Ms.

Berner was the attorney with primary responsibility for all issues related to medication abortion.

Declaration of Nicole G. Berner at ¶ 6.  She routinely counseled Planned Parenthood affiliates

and staff about legal issues that related to medication abortion as well as participated in a

national task force that monitors and evaluates the use of medication abortion at Planned

Parenthood affiliates nationwide.  Id.  In addition to her work on medication abortion, Ms.

Berner was responsible for developing several potential litigations that would expand access to

abortion services and protect minors' access to abortion.  Id. at ¶ 7.  Ms. Berner graduated from

the Boalt Hall School of Law at University of California, Berkeley (J.D. 1996), where she was

elected to Order of the Coif.  Following law school, Ms. Berner clerked for Judge Betty B.

Fletcher of the United States Court of Appeals for the Ninth Circuit, and for Chief Judge Thelton

Henderson of the United States District Court for the Northern District of California.  From 2000

to 2004, Ms. Berner was an associate with the law firm of Jenner & Block in Washington, D.C.

Id. at ¶¶ 3-5.

Roger K. Evans has been the Senior Director of the Public Policy Litigation and Law

Department of PPFA since October 1983.  Declaration of Roger K. Evans ("Evans Decl.") at ¶ 3.

He devotes virtually all of his time in that position to conducting, co-counseling, or assisting and

advising other attorneys in litigation such as this case.  Id.  His responsibilities in this regard are

national in scope, and he has participated as a lead or co-counsel in nearly all of the cases in the

U.S. Supreme Court concerning reproductive rights in the last two decades.  See, e.g., Planned

Parenthood Fed. of America v. Gonzales, 435 F.3d 1163 (9th Cir. 2006), cert. granted, 129 S. Ct.

2901 (June 19, 2006) (No. 05-1382); Rust v. Sullivan, 500 U.S. 173 (1991); Ohio v. Akron

Center for Reproductive Health, 497 U.S. 502 (1990); Webster v. Reprod. Health Servs., 492

U.S. 490 (1989).  The District Court for the District of South Dakota recently found that Mr.

Evans "is one of the preeminent reproductive rights attorneys in the United States," having

"unparalleled experience in reproductive rights law."  <u>Planned Parenthood Minn., N.D., S.D. v.</u>

<u>Rounds</u>, No. CIV. 02-4009-KES, 2006 WL 1889163, at *3, *5 (D.S.D. July 7, 2006) (order

awarding attorneys' fees and expenses).  Mr. Evans is a graduate of the New York University

School of Law (J.D. 1973).  During the approximately 29 year period he has been practicing law,

he has been in a supervisory or co-counsel position in well over 100 civil rights actions at all

levels of the federal courts.  He has also advised others and participated indirectly in well over

100 additional cases.  <u>See</u> Evans Decl. at ¶¶ 4-5.

<u>Helene T. Krasnoff</u>, counsel for plaintiffs on this fee petition, has been a staff attorney at

Planned Parenthood since 2000.  Declaration of Helene T. Krasnoff ("Krasnoff Decl.") at ¶ 3.  In

her time at Planned Parenthood, Ms. Krasnoff has had substantial experience litigating

reproductive rights challenges.  <u>See, e.g.</u>, <u>Planned Parenthood v. Gonzales</u>, 435 F.3d 1163 (9th

Cir. 2006), <u>cert. granted</u>, 129 S. Ct. 2901 (June 19, 2006) (No. 05-1382); <u>Planned Parenthood of</u>

<u>Idaho, Inc. v. Wasden</u>, 376 F.3d 908 (9th Cir. 2004); <u>Planned Parenthood Minn./S.D. v. Janklow</u>,

216 F. Supp. 2d 983 (D.S.D. 2002), <u>remanded by</u>, <u>Planned Parenthood Minn./S.D. v. Rounds</u>,

372 F.3d 969 (8th Cir. 2004).  Ms. Krasnoff graduated with honors from the University of

Michigan Law School in 1997.  From 1997 to 2000, Ms. Krasnoff was an associate with the law

firm of Arnold & Porter in Washington, D.C.  <u>See</u> Krasnoff Decl, at ¶¶ 4-5.

<u>B. Jessie Hill</u>, counsel for plaintiff Preterm, graduated *magna cum laude* from Harvard

Law School.  Declaration of B. Jessie Hill at ¶ 3.  From 1999-2000, she served as a law clerk to

Judge Karen Nelson Moore of the United States Court of Appeals for the Sixth Circuit.  <u>Id.</u> at

¶ 5.  Since 2000, Ms. Hill's practice has focused on civil rights litigation, including a year

14

litigating abortion rights cases as a staff attorney fellow at the Reproductive Freedom Project of the American Civil Liberties Union.  Id. at ¶ 6.  Ms. Hill has been involved in a number of successful § 1983 cases.  Ms. Hill has also written and spoken extensively on abortion rights issues.  See id. at ¶¶ 8-11.

Alphonse A. Gerhardstein served as local counsel in this case.  He is a graduate of the New York University School of Law and has been admitted to practice in Ohio and the federal courts since 1976.  Gerhardstein Decl. at ¶ 1.  For the past 26 years, most of his practice has been devoted to civil rights litigation.  He has been counsel or co-counsel on hundreds of civil rights cases filed in the state and federal courts.  See id. at ¶¶ 2-4.

Jennifer L. Branch, who served as local counsel, is a 1984 graduate of New York University and a 1987 graduate of Case Western Reserve University School of Law and was admitted to practice that same year.  Id. at ¶ 6.  Ms. Branch practiced with the Legal Aid Society of Cincinnati for nine years, focusing her practice on complex litigation, housing rights, and prisoner rights.  Id.  She has litigated civil rights cases in federal and state courts and has argued in the Ohio Supreme Court, the Ohio First and Tenth District Courts of Appeal, the Sixth Circuit, and tried cases in the U.S. District Courts in the Northern and Southern Districts in Ohio and in numerous Ohio Common Pleas Courts and Municipal Courts.  Id.

### 2.    Novelty and Difficulty of the Questions

This case presented novel and difficult questions.  This case was not just unique to Ohio. The Act was the first effort by a state to restrict access to medication abortion, and the first time a state attempted to impose restrictions on a medication used for abortion beyond those imposed by the federal government.  Thus, this litigation was truly the first of its kind.  In response to the Act, Plaintiffs brought four separate constitutional claims.  This required the development of

unprecedented factual, medical testimony and novel legal claims.

### 3.     Skill Requisite to Perform the Legal Service Properly

Plaintiffs' attorneys possess the skills needed to succeed in bringing their clients' claims regarding the Act.  In addition to their experience, reputations, and ability, Plaintiffs' lawyers have expertise in reproductive rights that other lawyers simply do not have.  Moreover, the PPFA lawyers have unparalleled expertise related to medication abortion in particular.  As explained in the declaration of Mr. Evans, PPFA and its affiliates have been leaders in providing women with access to this method of abortion.  Through this work, the PPFA lawyers have unique access to information, data, and medical expertise about medication abortion.  Evans Decl. at ¶ 7. Plaintiffs' lawyers certainly brought unique skills to the tasks before them which assisted them in achieving their exceptional result.

### 4.     Time Limitations Imposed By the Circumstances

The Act was signed by Governor Taft on June 24, 2004, and was scheduled to take effect only 90 days later, on September 23, 2004.  This meant that Plaintiffs had a great deal to accomplish in a short period of time.  As this Court is aware, Plaintiffs filed extensive papers with their initial pleadings, including numerous declarations in support of preliminary injunctive relief.  As discussed *supra*, only six weeks after filing, this Court conducted a preliminary injunction hearing with live expert witnesses, followed by post-hearing briefing.  Plaintiffs developed their case and accomplished all of this in a time period that still gave this Court sufficient time to consider the evidence and rule on their request for preliminary injunctive relief prior to the Act's effective date.  There can be little doubt that Plaintiffs accomplished a great deal in the face of serious time constraints.

5.      **Awards in Similar Cases**

In addition to the cases cited above, where courts have approved the use of a multiplier in complex constitutional rights cases, PPFA lawyers have been recognized as national leaders in reproductive health litigation and have been awarded the higher rates of lawyers in metropolitan centers when litigating in local forums.  For example, in <u>Planned Parenthood, Sioux Falls Clinic v. Miller</u>, 70 F.3d 517 (8th Cir. 1995), the court awarded higher rates to non-local PPFA counsel (one of whom is involved in this case, Roger Evans), reasoning that they handled the case in a more efficient manner:

> We have no doubt that competent South Dakota lawyers could have handled the case, and handled it well.  The lawyers who actually appeared for the plaintiffs, though did this kind of work routinely.  They are leaders in the field of reproductive-rights law.  They have extensive experience.  Because of this, we believe they were able to handle the case in a shorter length of time than a local lawyer.

70 F.3d at 519.  Citing the <u>Miller</u> decision, just this year, in <u>Planned Parenthood v. Rounds</u>, Civ. 02-4009-KES (D.S.D. July 7, 2006), the district court awarded out-of-town rates to PPFA lawyers because they "specialize in reproductive rights law" and "plaintiffs' counsels' expertise in reproductive law enabled them to effectively litigate this case in a shorter amount of time." 2006 WL 1889163, at *3.

Last year, in <u>Planned Parenthood of South Carolina v. Rose</u>, the district court awarded New York City hourly rates to Mr. Evans and other PPFA counsel even though the case was litigated in South Carolina (Order Granting Mot. For Attorney's Fees, <u>Planned Parenthood of S.C. v. Rose</u>, No. 2:01-cv-03571-PMD (Docket No. 76) (D.S.C. June 9, 2005) (attached hereto as Exhibit A)).  The court noted that the case involved complicated First Amendment issues, including issues of government speech as well as issues of ripeness, standing, unconstitutional conditions on government funding, due process and equal protection.  "Finally, a number of

these issues were particular to the specialized field of reproductive rights. As Plaintiffs' counsel are specialists in these fields and regularly litigate cases involving the questions at issue, their rates need not be adjusted downward [to local rates]." Exh. A at 6.[6]

### 6. The Results Obtained

Here, there can be little doubt that Plaintiffs achieved exceptional results for their clients and for the women of Ohio. As a result of their efforts, the Act is enjoined in its entirety and the women of Ohio have access to the same safe, legal abortion methods as women throughout the rest of the country.

For all of these reasons, Plaintiffs respectfully request that this Court award a multiplier of 1.5 to the award of fees in this case.

## IV.   PLAINTIFFS ARE ALSO ENTITLED TO REASONABLE COSTS.

Pursuant to 42 U.S.C. § 1988, as part of their attorneys' fee award, Plaintiffs are entitled to reimbursement of their non-taxable expenses that would normally be billed to fee-paying clients. Northcross, 611 F.2d at 639 ("The authority granted in section 1988 to award a 'reasonable attorney's fee' included the authority to award those reasonable out-of-pocket

---

[6] Indeed, the PPFA lawyers would be entitled to a national rate here because it would be "appropriate to fairly compensate particular attorneys" in this case. Louisville Black Police Officers Org., Inc., 700 F.2d at 278. The Sixth Circuit has explained that "district courts retain their discretion" to determine reasonable attorneys' fees and "are free to look to a national market, an area of specialization market or any other market they believe appropriate." Id.; see also e.g., Anderson v. Wilson, 357 F. Supp. 2d 992, 997 (E.D. Ky. 2005) (finding that hiring out-of-town counsel was reasonable when case involved "complex First Amendment and election issues"); Crosby v. Bowater Incorporated Retirement Plan for Salaried Employees of Great Northern, 262 F. Supp. 2d 804, 814, 813 (W.D. Mich. 2003) (allowing Detroit rates for "a highly difficult and novel case" that involved "a highly technical ERISA claim" brought in Western District of Michigan); cf. Nat'l Wildlife Fed. v. Hanson, 859 F.2d 313 (4th Cir. 1988) (awarding Washington, D.C. rates in an environmental/clean air case brought in North Carolina); Howes v. Med. Components, Inc., 761 F. Supp. 1193, 1196 (E.D. Pa. 1990) (Pennsylvania court awarded New York City rates to a New York patent firm because case required specialized patent expertise).

expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services."). These out-of-pocket expenses include costs associated with court fees and attorney travel. See id.

Thus, Plaintiffs are seeking reimbursement for the reasonable litigation expenses incurred by PPFA, Ms. Hill, and Gerhardstein & Branch in this case. See cost itemizations attached to Decls. of Evans, Hill, and Gerhardstein. As with their hours, Plaintiffs have exercised care in eliminating unnecessary costs. Plaintiffs do not seek all costs to which they are entitled. For example, PPFA does not seek reimbursement for their costs for routine copying, facsimile, electronic legal research, or U.S. mail postage, and Gerhardstein & Branch does not seek reimbursement for costs associated with phone calls or copying, even though such expenses were reasonably incurred. As demonstrated in the cost statements of Mr. Evans, Ms. Hill, and Mr. Gerhardstein, Plaintiffs are entitled to reimbursement for nontaxable litigation expenses of $12,166.95.

## CONCLUSION

For the reasons stated herein, Plaintiffs' motion for attorneys' fees and costs of $475,886.77 in the amount of should be granted.

Dated: December 1, 2006

Respectfully submitted,


By /s/ Jennifer L. Branch
Alphonse A. Gerhardstein #0032053
Jennifer L. Branch, #0038893
Attorneys for Plaintiffs
Gerhardstein & Branch Co. LPA
617 Vine Street, Suite 1409
Cincinnati OH 45202
(513) 621-9100
(513) 345-5543 (telefacsimile)

19

e-mail: agerhardstein@gbfirm.com
email: jbranch@gbfirm.com

and

Roger Evans, *pro hac vice*
Planned Parenthood Federation of America
434 West 33rd Street
New York, New York 10001
(212) 541-7800
(212) 247-6811 (telefacsimile)
e-mail: Roger.Evans@ppfa.org

Helene T. Krasnoff, *pro hac vice*
Planned Parenthood Federation of America
1780 Massachusetts Avenue, N.W.
Washington, D.C. 20036
(202) 973-4800
(202) 293-4349 (telefacsimile)
e-mail: Helene.Krasnoff@ppfa.org

Attorneys for Plaintiffs
Planned Parenthood Cincinnati Region,
Planned Parenthood of Central Ohio, and
Planned Parenthood of Greater Cleveland.

and

B. Jessie Hill, #0074770
Cooperating Counsel for the ACLU of Ohio
Case Western Reserve Univ., School of Law
11075 East Blvd.
Cleveland, Ohio 44106
(216) 368-0553
(216) 368-2086 (telefacsimile)
e-mail: bjh11@cwru.edu

Jeffrey M. Gamso, #0043869
Legal Director
ACLU of Ohio Foundation, Inc.
4506 Chester Avenue
Cleveland, Ohio 44103
(216) 472-2220
(216) 472-2210 (telefacsimile)
e-mail: jmgamso@acluohio.org

Attorneys for Plaintiff Preterm

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st of December, 2006, the foregoing documents were filed electronically:

Plaintiffs' Motion for Attorneys' Fees and Costs
Declaration of Roger K. Evans
Declaration of Nicole G. Berner
Declaration of Helene T. Krasnoff
Declaration of B. Jessie Hill
Declaration of Alphonse A. Gerhardstein
Declaration of Daniel J. Buckley

Notice of these filings will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing has been served by regular United States mail upon all parties for whom counsel has not yet entered an appearance and upon all counsel who have not entered their appearance via the electronic system.

/s/ Jennifer L. Branch
Jennifer L. Branch