IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD SOUTHWEST OHIO REGION, *et al.*, | : : : | Case No. 1:04-cv-00493 |
| Plaintiffs, | : : | Judge Susan J. Dlott |
| v. | : : : | **ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |
| MIKE DEWINE, *et al.*, | : : | |
| Defendants. | : | |

In this civil action, Plaintiffs challenged the constitutionality of Ohio Revised Code ("O.R.C.") § 2919.123 (the "Act") under 42 U.S.C. § 1983.[1] The Act requires that a physician providing RU-486 (mifepristone) to another person "for the purpose of inducing an abortion" must do so "in accordance with all provisions of federal law." O.R.C. § 2919.123(A). As construed by the Ohio Supreme Court, this language mandates that a physician may provide mifepristone "only by using the dosage indications and treatment protocols expressly approved by the [U.S. Food and Drug Administration] in the drug's final printed labeling as incorporated by the drug approval letter." *Cordray v. Planned Parenthood Cincinnati Region*, 122 Ohio St. 3d 361, 368, 911 N.E.2d 871, 879, 2009-Ohio-2972, ¶ 35 (2009).

Subsequent action by the U.S. Food and Drug Administration ("FDA")—nearly twelve years following the initiation of this lawsuit on August 2, 2004—mooted the proceedings and resulted in a voluntary dismissal of this case without prejudice. (Doc. 206.) Now before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 91), as supplemented (Doc. 209),

---

[1] Unless otherwise noted, all references herein to § refer to sections of Title 42 of the United States Code.

and the responses in opposition from the Ohio Attorney General (Docs. 99, 212) and the Prosecuting Attorney for Hamilton County, Ohio (Doc. 211).[2] For the reasons that follow, the Court will GRANT Plaintiffs' Motion.

## I. BACKGROUND

In Orders at various junctures throughout this case's long history, the Court has provided detailed summations of the facts and issues presented. The Court will not reiterate the case's entire trajectory here, but will summarize its history to the extent relevant to this ruling.

Plaintiffs' First Amended Complaint (Doc. 18) asserted four Fourteenth Amendment Due Process violation counts based upon the Act's unconstitutional vagueness, its violation of bodily integrity, its failure to include an exception for the health or life of the woman, and the unconstitutional burden it imposed on a woman's right to seek an abortion. (Doc. 18 at PageID 273–74.) On September 22, 2004, this Court entered an Order preliminarily enjoining the Act. *Planned Parenthood Cincinnati Region v. Taft*, 337 F. Supp. 2d 1040 (S.D. Ohio 2004) (Doc. 36) ("*Taft I*"). On appeal from that ruling, the Sixth Circuit issued an order on April 13, 2006 that "affirm[ed] the preliminary injunction insofar as it prohibits unconstitutional applications of the Act, but vacate[d] the preliminary injunction insofar as it prohibits constitutional applications of the Act[,]" and remanded the case for further proceedings related to the appropriate scope of the injunction. *Planned Parenthood Cincinnati Region v. Taft*, 444 F.3d 502 (6th Cir. 2006) ("*Taft II*").[3] On remand, this Court found the Act unconstitutionally vague and therefore "permanently enjoin[ed] Defendants from enforcing any provisions of the Act." *Planned*

---

[2] The Prosecuting Attorney's response is submitted not only on his behalf, but also in his capacity as the class representative of all Ohio prosecuting attorneys.

[3] This was an amended decision, the Sixth Circuit's original decision having been vacated on rehearing en banc. *See Planned Parenthood Cincinnati Region v. Taft*, 439 F.3d 304 (6th Cir. 2006).

*Parenthood Cincinnati Region v. Taft*, 459 F. Supp. 2d 626, 628 (S.D. Ohio 2006) (Doc. 81) ("*Taft III*").

Defendants appealed *Taft III*. On June 23, 2008, the Sixth Circuit issued an order that *sua sponte* certified two related questions to the Ohio Supreme Court.[4] *Planned Parenthood Cincinnati Region v. Strickland*, 531 F.3d 406 (6th Cir. 2008) ("*Strickland I*"). Upon the Ohio Supreme Court's resolution of these questions,[5] the Sixth Circuit vacated the permanent injunction ordered in *Taft III*, but *expressly affirmed* its continuing approval of the preliminary injunction as articulated in *Taft II* and again remanded the case for reconsideration of the scope of the injunction in light of its opinion and the Ohio Supreme Court's opinion. *Planned Parenthood Southwest Ohio Region v. Strickland*, 331 F. App'x 387 (6th Cir. 2009) ("*Strickland II*"). While dispositive motions were pending, this Court issued an Order that clarified that the scope of the preliminary injunction initially issued—narrowed by *Taft II*—to prohibit enforcement of the Act to the extent that enforcement would foreclose an exception for the

---

[4] The questions certified were:

> 1) Does O.R.C. § 2919.123 mandate that physicians in Ohio who perform abortions using mifepristone do so in compliance with the forty-nine-day gestational limit described in the FDA approval letter?
>
> 2) Does O.R.C. § 2919.123 mandate that physicians in Ohio who perform abortions using mifepristone do so in compliance with the treatment protocols and dosage indications described in the drug's final printed labeling?

*Strickland I*, 531 F.3d at 412.

[5] In *Cordray v. Planned Parenthood Cincinnati Region*, 122 Ohio St. 3d 361, 911 N.E.2d 871, 2009-Ohio-2972 (2009), the Court held:

> [A] physician may provide mifepristone for the purpose of inducing an abortion only through the patient's 49th day of pregnancy and only by using the dosage indications and treatment protocols expressly approved by the FDA in the drug's final printed labeling as incorporated by the drug approval letter.

*Id.* at 879.

3

health or life of the woman. *Planned Parenthood Cincinnati Region v. DeWine*, No. 1:04-CV-493, 2011 WL 463093 (S.D. Ohio Feb. 4, 2011) (Doc. 158).

Shortly following this clarifying Order, the Court denied Plaintiffs' renewed Motion for Summary Judgment and granted Defendants' Motion for Summary Judgment, both related to the Act's unconstitutional vagueness, in view of the Ohio Supreme Court's *Cordray* decision. *Planned Parenthood Southwest Ohio Region v. DeWine*, No. 1:04-CV-493, 2011 WL 9158009 (S.D. Ohio May 23, 2011) (Doc. 161 at PageID 2636–2648). Defendants had also moved for summary judgment as related to Plaintiffs' three remaining due process arguments: the Act's violation of bodily integrity, its lack of exception for the health or life of the woman, and the unconstitutional burden it imposed upon a woman's right to an abortion. The Court granted Defendants' Motion as to the bodily integrity and unconstitutional burden counts, but denied it as to the health or life of the woman count. *Id.* at PageID 2648–2656.

While the history recounted above spans nearly seven years, Plaintiffs limit their attorneys' fees and costs request to approximately the first eighteen months of this case. Namely, they seek recovery of those fees and costs incurred in connection with securing the initial preliminary injunction in *Taft I* through the first appeal thereof[6]—as well as the fees and costs associated with the filing and oral argument of the present Motion, as supplemented.[7]

## II. STANDARD OF LAW

Under the common law "American Rule," attorneys' fees generally are not awarded to prevailing parties absent explicit statutory authority. *McQueary v. Conway,* 614 F.3d 591 (6th

---

[6] The date through which services were calculated is February 24, 2006. (Doc. 209 at PageID 3084.) That date corresponds to the Sixth Circuit's initial Order resolving the appeal (Doc. 59), though, as explained in note three *supra*, that order was amended.

[7] This matter was heard in Chambers on March 29, 2017. At that time, Plaintiffs requested that they be permitted to include the attorneys' fees and costs associated with this oral argument, which obviously were not contemplated by the Motion, as supplemented.

4

Cir. 2010) (internal quotation omitted). Just such an explicit exception, however, is present here. Attorneys' fees incurred in litigation to enforce § 1983 may be recovered, in the Court's discretion, by the "prevailing party." 42 U.S.C. § 1988(b). "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit . . . . [T]he most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 103 S.Ct. 1933, 1941, 461 U.S. 424, 436 (1983). This section was enacted to "ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (quoting H.R.Rep. No. 94-1558, p. 1 (1976)). Cognizant of this purpose, courts avoid letting the fees and costs inquiry split off into "satellite," "fact-based and speculative inquiries" that compound the dispute between the parties. *McQueary*, 614 F.3d at 598; *Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation.").

The meaning of the term "prevailing party" is vigorously disputed by the parties. Case law interpreting this provision—in the absence of a clear-cut "prevailing party" in the traditional sense of the term—acknowledges a "thorny" analysis that requires a "contextual and case-specific inquiry." *McQueary*, 614 F.3d at 596, 601. The Court therefore turns to the application of this case law to the circumstances at bar.

### III. ANALYSIS

The resolution of Plaintiffs' Motion requires a two-step analysis. First, the Court must decide whether Plaintiffs are eligible to claim fees and costs under § 1988 as a "prevailing party." If so, the Court must decide whether the requested fees are reasonable. The Court addresses each issue below.

**A. Are Plaintiffs a "Prevailing Party" for Purposes of § 1988?**

Plaintiffs' fee request must be evaluated in the context of the Sixth Circuit's declaration that "when a claimant wins a preliminary injunction and nothing more, that usually will *not* suffice to obtain fees under § 1988." *Id.* at 604 (emphasis added). In the same opinion, however, the Sixth Circuit acknowledged that a litigant obtains "prevailing party" status for purposes of § 1988 "by succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought." *Id.* at 603; *Hensley*, 461 U.S. at 433 (the threshold under § 1988 is "generous," and a party is considered prevailing "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.") (quotation omitted). Like here, where there has not been a final disposition on the merits, a district court's task is to reconcile the tension between these two instructions and to determine whether an exception to the general rule is appropriate. *See McQueary*, 614 F.3d at 604.

Supreme Court precedent makes clear that any asserted catalytic effect of Plaintiffs' lawsuit short of a final merits determination (*e.g.*, the FDA's decision to change the labeling for RU-486, which mooted the controversy at bar) is not sufficient in and of itself to warrant fees under § 1988. *Id.* at 597 (discussing *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 121 S.Ct. 1835 (2001)). Instead, if fees are appropriate at all in such a case, it is clear that a plaintiff's success—albeit preliminary—must "create a lasting change in the legal relationship between the parties." *Id.* at 601; *Sole v. T.A. Wyner*, 551 U.S. 74, 78, 127 S.Ct. 2188, 2192 (2007) ("a transient victory at the threshold of an action" does not warrant fees); *O'Neill v. Coughlan*, 490 F. App'x 733, 735 (6th Cir. 2012) (preliminary relief may warrant "prevailing party" status only if the injunction represents an unambiguous

6

indication of probable success on the merits, and not merely a maintenance of the status quo.) (internal quotation omitted). Practical success alone may not be enough. Put differently, a party must demonstrate that he "prevailed on the gravamen of [his] plea" and not merely that he achieved a technical victory. *Sole*, 551 U.S. at 83; *McQueary*, 614 F.3d at 602 ("[W]e usually measure the plaintiff's gain based on the relief requested in his complaint, not based on the practical significance of the relief obtained.").

Both parties rely on *McQueary* to support their position. Therein, the plaintiff challenged a Kentucky law limiting funeral protests under the First and Fourteenth Amendments. *Id.* at 595. Finding that certain provisions of the law were likely to be determined constitutionally overbroad, the district court preliminarily enjoined enforcement of the likely offending provisions. *Id.* at 596. Within eighteen months of the commencement of the lawsuit, the Kentucky legislature repealed those provisions. *Id.* The district court then entered an order dismissing the case as moot and denying attorney fees. *Id.* On appeal, the Sixth Circuit remanded for consideration of whether an exception to the general rule against fees for only preliminary success was appropriate. *Id.* at 604.

On remand, the district court analyzed the case in terms of two examples of "exceptions" to the general rule cited by the Sixth Circuit in *McQueary*. *McQueary v. Conway*, No. 06-CV-24-KKC, 2012 WL 3149344 (E.D. Ky. Aug. 1, 2012) ("*McQueary II*"), *aff'd*, 508 F. App'x 522 (6th Cir. 2012). It first considered whether the plaintiff "receive[d] everything it asked for in the lawsuit, and all that moots the case is court-ordered success and the passage of time."[8] *Id.* at *2.

---

[8] The district court repeated the following example, first provided by the *McQueary* court, to illustrate this exception: "when protesters seek an injunction to exercise their First Amendment rights at a specific time and place—say to demonstrate at a Saturday parade—a preliminary injunction will get them all the court-ordered relief they need and the end of the parade will moot the case." *McQueary II,* 2012 WL 3149344, at *2 (quotation omitted).

7

The district court concluded that the plaintiff had requested a permanent injunction, not an injunction tailored to a particular funeral; therefore, it did not fall within this exception. *Id.* Similarly, the district court concluded that the preliminary injunction had not "granted [the plaintiff] all the relief he sought[,]" leaving "nothing more [the district court] could do for him," which would have presented another possible exception to the general rule.[9] *Id.*

Having distinguished the examples cited in *McQueary*, the district court in *McQueary II* focused on the remanding decision's language requiring that a "prevailing party" obtain "'enduring' and irrevocable" relief and again denied fees. *Id.* at *3. The quoted language comes from the *McQueary* decision's summary of the Supreme Court's holding in *Sole v. Wyner*, 127 S.Ct. 2188, 2196, 551 U.S. 74, 86 (2007). The *Sole* decision, however, does not use the terms "revocable" or "irrevocable," and the Court finds that the Sixth Circuit's description of the *Sole* case is dicta. Moreover, characterizing the required result for an award of fees as "irrevocable" would seem inconsistent with prior Sixth Circuit precedent, which has instructed that a plaintiff may be considered a "prevailing party" if it obtained a preliminary injunction that was "an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favor[ed] the plaintiff." *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753 (6th Cir. 2002).[10]

---

[9] For this exception, the district court provided the example of a plaintiff deputy sheriff that was:

> suspected of using excessive force and, as a result, the county fired him. He claimed that, before firing him, the county made him file a report of the incident without first consulting a lawyer. The court granted him a preliminary injunction that prohibited the county from using the report at the hearing on his appeal of his termination. Thus, the plaintiff's claim for permanent relief became moot when the termination hearing was over and this was after the preliminary injunction had done its job.

*Id.* (quotation omitted).

[10] The court in *McQueary* acknowledges this particular distinction among preliminary injunctions in its discussion of whether "preliminary-injunction winners" might be "*always* eligible for fees." *McQueary*, 614 F.3d at 600–01. This portion of the opinion suggests to this Court that the Sixth Circuit envisioned another potential exception to the

8

In *Sole*, the plaintiff had secured a preliminary injunction on a "hasty and abbreviated" hearing, held the day after the plaintiff's motion was filed and the day before the event that was the subject of the requested injunction. *Sole*, 551 U.S. at 84. The preliminary relief expired before it could be appealed, but on the ultimate merits adjudication, the district court *expressly rejected* the premise that had been successful for the plaintiff at the preliminary hearing. *Id.* at 84–85. The Supreme Court, therefore, held that § 1988 fees were inappropriate in such a case. *Id.* at 86.

Turning to the facts at bar, the Court finds that the preliminary injunction secured by Plaintiffs represents the type of substantive, "lasting change in the legal relationship between the parties" that warrants fees under § 1988. *McQueary*, 614 F.3d at 601. For nearly twelve years, a preliminary injunction was in place that—at minimum—prohibited application of the Act to the extent that it did not provide an exception for the health or life of the woman. Furthermore, unlike in *Sole*, the preliminary injunction obtained was expressly affirmed by the Sixth Circuit due to the fact that Plaintiffs had "established a strong likelihood of succeeding on the merits of their claim that the Act is unconstitutional because it lacks a health or life exception." *Taft II*, 444 F.3d at 518; *Strickland II*, 331 F. App'x at 387. The Court concludes that this case falls within an exception to the general rule against fees, where the preliminary injunction obtained goes beyond merely the maintenance of the status quo, as discussed in both *McQueary* and *Dubuc*. Indeed, the Sixth Circuit twice acknowledged and affirmed Plaintiffs' strong likelihood of success on the merits in this case.

Defendants argue their own successes in this case overwhelmed Plaintiffs' single victory—the preliminary injunction granted having provided much narrower relief than Plaintiffs

---

general rule against awarding fees to plaintiffs who obtain only preliminary relief —where the preliminary relief, though not necessarily irrevocable, is clear, substantive, and "lasting." *Id.* at 601.

sought in bringing the lawsuit. But in *Hensley*, the Supreme Court distinguished cases with several distinct claims based on varying facts and arguments from those where there is a single claim supported by various legal theories:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435.

In the case at bar, Plaintiffs asserted four Due Process claims related to the Act. These claims were based on a "common core of facts," but each asserted a different legal theory in support of the relief requested. As ultimately clarified, Defendants were enjoined on the basis of one theory: the lack of a health or life exception to the Act. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of . . . certain grounds is not a sufficient reason for reducing a fee." *Id.* The fact that the relief under this legal theory may have been narrower than the relief granted had a different theory been adopted does not eviscerate the victory.[11] Plaintiffs sought a determination that the Act was unconstitutional under the Due Process clause of the Fourteenth Amendment, and the preliminary injunction determined that Plaintiffs had demonstrated a strong likelihood of success in that claim under at least one legal theory. Under *McQueary* and *Dubuc*, the Court concludes that this is sufficient to find that Plaintiffs are a "prevailing party" under § 1988.

---

[11] To the extent that this might be considered "partial or limited success," the effect should be reflected in the context of the reasonableness of the fees and not with a determination that a plaintiff has not prevailed for purposes of § 1988. *Hensley*, 461 U.S. at 436.

The Court similarly rejects Defendants' contention that Plaintiffs obtained no material benefit from the preliminary injunction and that the legal relationship between the parties was not changed. Defendants base this argument, first, on the fact that Plaintiffs at one point in the litigation felt constrained to cease all medication abortions because of a lack of clarity regarding the extent of the injunction. Plaintiffs counter that this temporary cessation was tied to a fear of criminal prosecution absent a clear understanding of the extent of the preliminary injunction; and note that this cessation lasted only approximately one month. For the balance of the period between September of 2004 and May of 2016, Defendants were prohibited from enforcing the Act to the extent that it did not provide a health or life exception. Defendants next argue that the victory was not lasting because the Act remains fully enforceable with no legislative changes or judicial restriction following the FDA's action. Again, however, for nearly *twelve years*, the preliminary injunction expressly prohibited certain enforcement of the Act. While not perfectly analogous, this is at least similar to the example cited in note eight, *supra*, where a court's action and the passage of time moot an action. Regardless, the Court finds that the length of time in which the injunction's prohibition was in place to be sufficiently "lasting" for purposes of § 1988.

In view of the discussion above, the Court concludes that Plaintiffs are a "prevailing party" for purposes of § 1988. The Court therefore moves to the reasonableness of the fees and costs requested.

### B. Are Plaintiffs' Requested Fees/Costs Reasonable?

This analysis begins with the "lodestar" method: "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 551–52 (6th Cir. 2008) (quotation omitted). If considering whether

11

a fee adjustment is appropriate, which in this case is the use of 2016 attorney fee rates versus 2006 rates, district courts are encouraged to consult a twelve-point list of considerations from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Barnes v. City of Cincinnati,* 401 F.3d 729, 745–46 (6th Cir. 2005) (listing the *Johnson* factors and noting that they were favorably cited by the Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939 (1989)).[12]  Defendants argue that both the hours and rates expended are unreasonable.  The Court reviews each contention with the *Johnson* factors in mind.

### 1. Hours

Defendants cite three reasons that the number of hours that Plaintiffs expended should be reduced.  First, they argue that the time spent working on *amicus* briefs is not compensable. While Plaintiffs disagree with that premise, they emphasize in reply that they have deducted those hours from the fee requested in an abundance of caution.  The Court therefore finds this argument moot.

Defendants next argue that the hours billed are excessive in relation to the claimed expertise of Plaintiffs' counsel.  They cite, in particular, Ms. Berner's 174 hours billed up to the filing of the lawsuit (over an approximately two-month period) in view of her specialty in

---

[12] While providing a framework for analysis, courts acknowledge that these factors are of only limited utility: "'many of these factors [are] usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'"  *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (quoting *Hensley*, 461 U.S. at 434 n.9).  In addition, the factors do not carry equal weight; the most important consideration is the results obtained. *Hensley* 461 U.S. at 436.

12

medication abortion. (*See* Berner Decl. at ¶¶ 6–7, PageID 1190–91 Doc. 91-3.) They argue that while the Act was new, the issues it presented were not. As an initial matter, the Court agrees with Plaintiffs that it should disregard the case cited by Defendants in support of this argument, *Lavin v. Brunner*, No. 1:10 CV 1986, 2013 WL 2950334 (N.D. Ohio June 13, 2013), which was vacated and remanded in a strongly worded opinion from the Sixth Circuit. *Lavin v. Husted*, 764 F.3d 646 (6th Cir. 2014). As to the argument itself, the Court disagrees with Defendants. The constitutional challenge here was novel, the Act being the first challenge by a state to medication abortion and representing the first time that a state imposed stricter restrictions on such medications than the federal government. Even with Ms. Berner's expertise, the Court is not surprised by the fact that it would take several weeks of billable time to prepare for this undertaking. The crunch imposed by the timetable—the Act signed on June 24, 2004 set to take effect within ninety days, on September 23, 2004—and the fact that a full preliminary injunction hearing with live witnesses and post-hearing briefing occurred before the expiration of this ninety-day period, lend further support to this conclusion.

The third reason Defendants argue that fees should be reduced is duplication of effort. In addition to the general contention that Ms. Berner overbilled (at $400 per hour) prior to filing the lawsuit, Defendants argue that she billed 13 hours for preparing witnesses for the preliminary injunction hearing, while Mr. Evans billed time for that same witness. Defendants also cite Mr. Evans billing 45.5 hours (at $475 per hour) and Ms. Hill billing 14.4 hours (at $350 per hour) editing Ms. Berner's brief, which already consumed 61.5 of her own hours. Even assuming that the wholesale elimination of the hours representing work done by multiple attorneys is appropriate[13] (*i.e.*, the 13 hours Ms. Berner assisted with witness preparation, and the 59.9 hours

---

[13] Aside from the purpose of this illustration, the Court does not find this assumption warranted. Indeed, the Court finds it advisable for multiple attorneys to collaborate on various aspects of a complex case to edit, offer different

13

of brief editing), this "duplication" represents $31,852.50. The 10 percent reduction conceded by Plaintiffs equals $41,351.62. The difference would allow for a reduction of Ms. Berner's initial 174 hours or preparatory work to file the lawsuit by 23 hours—more than 13 percent.

The Court finds that all of the above supports the conclusion that the hours expended are reasonable. Further, the Court finds that several of the *Johnson* factors—(1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, and (7) time limitations imposed by the client or the circumstances—weigh in favor of Plaintiffs.

**2. Rates**

Plaintiffs filed their initial attorneys' fees and costs Motion on December 1, 2006. As supplemented, they seek an adjustment to 2016 rates to account for the substantial delay in payment. They cite several cases in support of a district court's discretion to authorize such an adjustment. *Missouri v. Jenkins*, 491 U.S. 274, 282–84, 109 S.Ct. 2463, 2468–69 (1989); *Barnes,* 401 F.3d at 745 (6th Cir. 2005). In *Jenkins*, the Supreme Court called the question of whether such an adjustment was allowed "not a difficult one," and held "that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise —is within the contemplation of [§ 1988]." *Jenkins*, 491 U.S. at 282, 284. Defendants contest this adjustment, characterizing it as a windfall, but appear to concede that the 2006 rates originally requested were appropriate.

---

perspectives, and refine arguments. The case cited by Defendants to support a reduction for duplication, *Kentucky Restaurant Concepts Inc. v. City of Louisville*, 117 F. App'x 415 (6th Cir. 2004), does not undercut this premise. In that case, the court upheld the district court's determination that "considerable time" was duplicated and too many attorneys were hired. *Id.* at 419. Here, the alleged duplication accounts for less than seven percent of the total hours requested. Moreover, the *Kentucky Restaurant* court endorsed the approach taken by Plaintiffs, noting that "hours may be cut for duplication . . . by the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours." *Id.* (quotation omitted). *See also Hensley*, 461 U.S. at 436–37 ("There is no precise rule or formula . . . . The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award . . . . The court necessarily has discretion.").

The Court finds an adjustment from 2006 to 2016 rates eminently reasonable in this instance, where a ruling on Plaintiffs' Motion was delayed by more than a decade. The case cited by Defendants, *Gonter v. Hunt Valve Company, Inc.*, 510 F.3d 610 (6th Cir. 2007), is not persuasive otherwise. There, the bulk of the attorneys' fees and costs were incurred between 2001 and 2003. *Id.* at 617. While the district court therein had declined to approve fees based on 2005 rates, it had allowed an adjustment to 2004 rates, which the Sixth Circuit affirmed. *Id.* at 617–18. Thus, the *Gonter* court found that an adjustment, though less than what was requested, was appropriate due to the plaintiff "waiting several years for compensation." *Id.* at 617.

Here, significant delay warrants the adjustment, and the 2016 rates requested are substantially consistent with, even slightly lower than, what is reflected in Judge Rubin's 1983 rubric that is routinely relied upon in this District:

| Name | Hourly Rate 2016 | Hourly Rate 2006 | Year Admitted | Years in Practice | Rubin Rate as of 2016 |
|---|---|---|---|---|---|
| Roger Evans | $475 | $425 | 1973 | 43 | $468.23 |
| Nicole Berner | $400 | $300 | 1996 | 20 | $413.84 |
| Helene Krasnoff | $400 | $290 | 1997 | 19 | $413.84 |
| B. Jessie Hill | $350 | $250 | 2002 | 14 | $413.84 |
| Al Gerhardstein | $475 | $375 | 1976 | 40 | $468.23 |
| Jennifer Branch | $425 | $275 | 1987 | 29 | $468.23 |
| Paralegals | $125 | $65 | | | $138.31 |
| Law Clerk | $85 | $65 | | | $87.42 |

The rates for similarly experienced litigation attorneys in Cincinnati, as awarded in several cases within the last ten years from the Southern District of Ohio, are also substantially similar to or even higher than the 2016 rates requested by Plaintiffs. (*See* Doc. 209 at PageID 3090.) The Court carefully considers this comparison, acknowledging that "[i]t is intended that the amount of fees awarded . . . be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature." *Hensley*, 461 U.S. at 430 n.4. Plaintiffs'

15

attorneys in this case have considerable experience and excellent reputations. (*See* Doc. 91 at PageID 1235–1238; Decls. of Pls.' Counsel at Docs. 91-2–91-5; 92; 101-1–101-2; 209-1–209-3.)

The Court finds that 2016 rates requested are reasonable. Considering the *Johnson* factors in the context of the above discussion, the Court also finds that (5), the customary fee, and (9), the experience, reputation, and ability of the attorneys, weigh in favor of Plaintiffs.

**C. Does the Level of Plaintiffs' Success Warrant Further Reduction?**

As indicated earlier in this Order (*see supra* note 11), the Supreme Court in *Hensley* held that district courts exercising their discretion regarding § 1988 fees must "consider the relationship between the extent of success and the amount of the fee award." *Hensley*, 461 U.S. at 438. Defendants argue that a further reduction beyond the 10 percent conceded by Plaintiffs is necessary because, even assuming that Plaintiffs earned "prevailing party" status, Plaintiffs were granted only limited relief. The preliminary injunction prohibited enforcement of the Act in limited circumstances where the health or life of a woman was at risk—it was ultimately not the blanket prohibition that may have resulted had other legal theories advanced been accepted by the Sixth Circuit and by this Court.

This lawsuit fits within the mold discussed by the Supreme Court in *Hensley*: "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440. In *Hensley*, the respondents had alleged violations of the constitutionality of treatment of involuntarily confined patients related to six distinct areas: physical environment; individual treatment plans; least restrictive environment; visitation, telephone, and mail privileges; seclusion and restraint; and staffing. *Id.* at 427. Plaintiffs were successful in all but the latter. *Id.* at 428. While the Court hinted that the award ultimately might

be determined reasonable by the lower court given that five of the six allegations were successful (*see id.* at 436), the Court remanded for an express examination of the degree of success versus the reasonableness of the fee. *Id.* at 438.

To the extent that a bifurcation relative to the degree of success could be warranted in this case, the proportional reduction urged by Defendants already is embedded in Plaintiffs' fee request, which includes only fees through the prosecution of the preliminary injunction—through first appeal (*Taft II*)—and the prosecution of the present Motion. Beyond that date, the case endured approximately ten years until its ultimate dismissal. (Doc. 206.) In the meantime, among other things, Plaintiffs defended several appealed Orders, briefed a Motion to Dismiss, and briefed multiple Motions for Summary Judgment. Plaintiffs rightly do not seek recoupment of all such associated fees, but only those that resulted in the requested enjoinment of the Act's enforcement.

Moreover, other than its preliminary character, the Court cannot conclude that the relief granted was "limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440. The aim of the lawsuit was to enjoin enforcement of a law that prohibited otherwise legal, "off-label" prescriptions of RU-486 and to obtain a ruling that the Act was unconstitutional. While the Court did not accept each of the reasons advanced for why the Act was unconstitutional, it was successful in convincing the Court to enjoin enforcement of the Act to the extent that its application was unconstitutional.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 91), as supplemented (Doc. 209) is **GRANTED**. Plaintiffs are **ORDERED** to further supplement the

record with evidence in support of the attorneys' fees and costs associated with the prosecution of this Motion within 30 days of the entry of this Order.

    **IT IS SO ORDERED**.

Dated:  July 21, 2017                 <u>S/Susan J. Dlott</u>_____
                                          Judge Susan J. Dlott
                                          United States District Court